# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CJ 0082

## STATE OF LOUISIANA
## IN THE INTEREST OF C.W., C.T., and T.L.

Judgment Rendered:_____SEP 1 9 2025_____

\* \* \* \* \* \* \*

On Appeal from the 23rd Judicial District Court
In and for the Parish of Assumption
State of Louisiana
Trial Court No. 4799

Honorable Steven Tureau, Judge Presiding

\* \* \* \* \* \* \*

| | |
|---|---|
| Jane C. Hogan<br>Hammond, Louisiana | Attorney for Appellants<br>S.T., Mother of T.L.<br>Tr.L., Father of T.L. |
| Mary R. Mustaller McMillan<br>New Orleans, Louisiana | Attorney for Appellant<br>T.L. |
| Linda A. Mitchell<br>Houma, Louisiana | Attorney for Appellee<br>State of Louisiana, Department<br>of Children and Family Services |

\* \* \* \* \* \* \*

**BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.**

**PENZATO, J.**

This is an appeal from a judgment terminating parental rights and certifying a minor child, T.L., for adoption. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

T.L. (born June 11, 2013) entered the State's custody on July 14, 2022, pursuant to an instanter order for removal.[1] According to the affidavit in support of the instanter order, the Department of Children and Family Services (DCFS) received a report on July 7, 2022, of Neglect/Lack of Adequate Supervision and Neglect/Dependency. T.L.'s mother, S.T., had called 911 and indicated to the operator that she wanted to kill herself. S.T. was transported to the hospital for a mental evaluation, and law enforcement made arrangements with S.T.'s mother, L.T., to care for T.L. while S.T. was hospitalized. At that time, T.L.'s father, Tr.L., was incarcerated. Thereafter, on July 14, 2022, L.T. contacted law enforcement stating that she no longer wanted to care for T.L. because he was not listening nor following directions. T.L. was then taken into the State's custody.

On August 2, 2022, the District Attorney for the 23rd Judicial District filed a child in need of care petition, asserting therein that S.T. demonstrated diminished caretaker capacities due to her violent, dangerous, and/or impulsive behavior towards her children, untreated mental health, and alleged substance abuse. The petition further alleged that Tr.L. demonstrated diminished caretaker capacities due to his recent incarceration, lack of involvement with T.L., and inability to care for and/or meet T.L.'s day-to-day needs. According to the petition, the diminished caretaker capacities presented safety threats and concerns to the safety and well-being of T.L. and left him at risk of neglect and/or abuse.

---

[1] T.L.'s siblings, C.W. (born October 18, 2006) and C.T. (born October 17, 2007), were also taken into State custody on July 14, 2022. C.W. was placed in the custody of a paternal relative with whom he had been living for the six years prior to these proceedings, and his case was closed at the October 6, 2022 disposition hearing. C.T. remained in foster care at the time of the October 8, 2024 termination hearing. C.W. and C.T. were not subject to the judgment on appeal.

2

At the adjudication hearing on September 7, 2022, S.T. and Tr.L. stipulated to continued custody without admitting to the allegations of the petition, and T.L. was adjudicated to be in need of care. At a disposition hearing on October 6, 2022, the trial court ordered that T.L. remain in the custody of the State and that the parties comply with the DCFS case plan.

The matter came for a case review hearing on January 4, 2023. T.L.'s custody was maintained with the State, and a permanency hearing was set for July 6, 2023. At that time, DCFS requested and was granted an additional three months to discuss permanency. At the October 3, 2023 permanency hearing, the case plan for T.L. was changed to adoption.

On April 25, 2024, DCFS filed a petition for termination of parental rights, requesting that S.T.'s and Tr.L.'s rights be terminated pursuant to La. Ch.C. art. 1015, including but not limited to Sections (4) and/or (5). In support thereof, DCFS alleged that neither parent had provided any financial contributions for T.L.'s care since he came into the State's custody on July 14, 2022, despite being court-ordered to pay $25.00 per month as a part of their case plans. Additionally, DCFS alleged that neither parent had substantially complied with the court-approved case plan for services for the safe return of T.L. Specifically, DCFS alleged that S.T. had failed to provide documentation of successful completion of a substance abuse treatment program and demonstrate sustained sobriety. DCFS further alleged that despite the interventions attempted, there was no reasonable expectation of significant improvement in either parent's condition or conduct in the near future as they had failed to demonstrate an ability and/or willingness to provide for T.L.'s ongoing health and safety needs in a safe, healthy, drug-free environment.

The trial court held a hearing on the petition for termination of parental rights on October 8, 2024. At the conclusion of the hearing, the trial court took the matter under advisement. On October 13, 2024, the trial court signed a judgment

terminating the parental rights of both S.T. and Tr.L. to T.L. and certifying T.L. for adoption.

S.T. and Tr.L., individually and on behalf of T.L., appeal the judgment, contending the trial court erred in terminating both S.T.'s and Tr.L.'s parental rights and in finding that termination was in T.L.'s best interest.

## LAW AND ANALYSIS

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. The purpose of an involuntary termination proceeding is "to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption." La. Ch.C. art. 1001. The focus is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. *State in Interest of H.R.*, 2021-1328 (La. App. 1 Cir. 2/25/22), 341 So. 3d 592, 597.

Louisiana Children's Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights of parents. Relevant hereto, Sections (3), (4), and (5) provide the following grounds for termination:

> (3) Misconduct of the parent toward this child or any other child of the parent or any other child which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the … commission … of …:
> …
>
> (i) Abuse or neglect which is chronic, life-threatening, or results in gravely disabling physical or psychological injury or disfigurement.
> …
>
> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

4

(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In order to terminate a person's parental rights, the court must find the State has established at least one of the statutory grounds contained in Article 1015 by clear and convincing evidence. See La. Ch.C. art. 1035(A); *State in Interest of C.F.*, 2017-1054 (La. 12/6/17), 235 So. 3d 1066, 1072. Even upon finding the State has met its evidentiary burden, a court may not terminate parental rights unless it determines that to do so is in the child's best interest. See La. Ch.C. art. 1037(B). Whether termination of parental rights is warranted is a question of fact, and a trial court's factual determinations will not be set aside in the absence of manifest error. *State in Interest of E.O.*, 2018-1093 (La. App. 1 Cir. 2/6/19), 272 So. 3d 552, 556. Under the manifest error standard, this Court does not decide whether the factfinder was right or wrong; rather, we are required to consider the entire record to determine whether a reasonable factual basis exists for the finding, and whether the finding is manifestly erroneous or clearly wrong. *State in Interest of H.R.*, 341 So. 3d at 598.

In reasons contained in the October 13, 2024 judgment, the trial court found that S.T. had not provided financial support for T.L. since T.L. was taken into DCFS's custody on July 14, 2022. The trial court further found that while S.T. had

5

completed a parenting class and 36 hours of domestic abuse counseling, she had failed to address the substance abuse issue central to her case plan. The trial court noted that S.T. had left treatment on two separate occasions, admitted to using methamphetamine as recently as August 2024, and had not made any meaningful progress toward achieving stability or sobriety. The trial court found that under the circumstances, S.T.'s behavior constituted gross negligence under La. Ch.C. art. 1015(3) and presented a significant risk to T.L.'s well-being.

With regard to Tr.L., the trial court found that he had also failed to comply with his case plan. The trial court noted that Tr.L. resided with his mother, and although the home was unsuitable for T.L.'s care, Tr.L. admitted he had not made a concerted effort to secure stable housing. The trial court also noted that Tr.L. had used marijuana as recently as July 15, 2024, and had not provided financial support or demonstrated substantial compliance with the case plan in the two years since T.L. had been in DCFS's care. The trial court found that Tr.L.'s failure to secure suitable housing and demonstrate progress met the grounds for termination under La. Ch.C. art. 1015(5).

The trial court further noted that the DCFS case worker confirmed that both parents had failed to make sufficient progress toward reunification and recommended that T.L. be freed for adoption as neither parent had provided a safe, stable environment for him. The trial count found the evidence presented had clearly shown that both parents had failed to comply with their case plans and provide T.L. with the stability necessary for his well-being, concluding the State had met its burden of proving by clear and convincing evidence that termination of S.T.'s and Tr.L.'s parental rights was justified under La. Ch.C. art. 1015. The trial court further found that based on the evidence, it was in T.L.'s best interest that the parental rights of both parents be terminated so that T.L. could be placed in a stable and permanent home through adoption.

Appellants argue the trial court erred in terminating S.T.'s parental rights pursuant to La. Ch.C. art. 1015(3), which was neither pled nor proven by the State, and in finding that S.T. had not made sufficient progress toward reunification. Appellants further argue the trial court erred in terminating Tr.L.'s parental rights, contending DCFS failed to make reasonable efforts to achieve reunification. Finally, appellants argue the trial court erred in finding that termination of parental rights and subsequent adoption was in T.L.'s best interest.

At the termination hearing, the DCFS case manager testified that S.T.'s case plan for reunification required: a mental health assessment, a drug abuse assessment, parental contributions, stable living, parenting classes, and visitation. The case manager confirmed that S.T. had completed parenting classes and maintained suitable housing. The case manager agreed that substance abuse, specifically methamphetamine, was identified as an issue for S.T. and that S.T. had been to two inpatient facilities. The case manager testified that on both occasions, S.T. checked out of the facilities before completing the programs. In connection with the case manager's testimony, the State introduced into evidence the results of a drug test reflecting that a urine specimen collected from S.T. on August 21, 2024, tested positive for methamphetamines. The case manager also testified that S.T. had not provided the required $25.00 per month financial contributions.

With regard to Tr.L., the case manager testified that his case plan required: batterers intervention, a mental health assessment, a drug abuse assessment, parental contributions, safe and stable housing, and parenting classes. Tr.L. had not provided anything to the case worker to indicate he was in compliance with his case plan. The case manager testified regarding one instance in September of 2024 that Tr.L. had reached out for transportation to one of the court-ordered classes, but DCFS did not have anyone available to transport him. The case manager testified that Tr.L.'s housing was not suitable for T.L. but Tr.L. had never asked for assistance in finding

7

suitable housing.

Finally, the case manager testified that T.L. had recently been placed in a certified foster home in Zachary. She confirmed that DCFS believed adoption would be in T.L.'s best interest.

S.T. testified at the termination hearing that she had completed the parenting classes and domestic violence counseling that were part of her case plan. According to S.T., the only thing she had left to complete was addressing her substance abuse problem. She testified that the last time she had used methamphetamine was in August of 2024. S.T. testified she could not participate in substance abuse counseling because she did not have transportation and DCFS would not provide it. She further testified that since T.L. had been taken into the State's custody, she went for inpatient treatment twice. According to S.T., she left both facilities without completing the program "because of the nonsense that was happening inside the facility." S.T. testified she was currently receiving substance abuse treatment and mental health counseling through Start Corporation in Thibodaux, because Start provided transportation. She did not know whether she told DCFS that she was going to Start. S.T. testified that since July 14, 2022, she had made only one $25.00 monthly payment as required by her case plan because she could not afford it, but she gave T.L. money directly when she saw him.

Tr.L. testified at the termination hearing that he was incarcerated at the time T.L. was taken into the State's custody on July 14, 2022, and was released on November 9, 2022. Tr.L. testified he completed eight out of twenty-one classes of a batterers intervention program, but the program was shut down. According to Tr.L., he was currently participating in substance abuse treatment and had last used marijuana on July 15, 2024. His case plan also required him to pay $25.00 per month, but he acknowledged he had not made any payments. Tr.L. testified he was living with his mother, and her home could not accommodate T.L.

In determining whether the record supports the trial court's finding that termination of both S.T.'s and Tr.L.'s parental rights was justified under La. Ch.C. art. 1015, we first address appellants' argument that the trial court committed an error of law in relying on La. Ch.C. art. 1015(3), which was not pled by the State. We note that in its petition for termination, DCFS requested that S.T. and Tr.L's rights be terminated pursuant to La. Ch.C. art. 1015, **including but not limited to** Sections (4) and/or (5). Moreover, the trial court made a number of factual findings in its October 13, 2024 judgment. It concluded S.T. had not provided financial support since T.L. was taken into custody on July 14, 2022, a ground for termination under La. Ch.C. art. 1015(4). The trial court further found S.T. had failed to address the substance abuse issue central to her case plan, left treatment centers prior to completion of treatment on two separate occasions, admitted to using methamphetamine as recently as August 2024, and had not made meaningful progress toward achieving stability or sobriety. While the trial court concluded this behavior constituted gross negligence under La. Ch.C. art. 1015(3), it also demonstrates that S.T. failed to substantially comply with her case plan. Appellants argue that there was a reasonable expectation S.T. could demonstrate significant improvement in the near future because she had been drug-free for two months at the time of the termination hearing and had started substance abuse treatment at Start. Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate a substantial change, such as significantly altering or modifying that behavior which served as the basis for and resulted in the State's removal of the children from the home. *State in Interest of T.L.*, 2021-0728 (La. App. 1 Cir. 12/22/21), 340 So. 3d 4, 12, <u>writ denied</u>, 2022-00170 (La. 3/2/22). In this case, S.T. started and abandoned two inpatient treatment plans during the time T.L. was in the State's custody and continued to use methamphetamine even after the petition for termination had been filed. Under these circumstances, the record

9

supports the finding that there was no reasonable expectation of significant improvement in her condition or conduct in the near future, establishing a ground for termination under La. Ch.C. art. 1015(5). As noted above, only one ground for termination need be established under Article 1015. *State in Interest of I.K.*, 2022-0927 (La. App. 1 Cir. 12/22/22), 358 So. 3d 56, 62, writ denied, 2023-00089 (La. 3/7/23), 357 So. 3d 349. Under the evidence presented herein, we find the record supports the factual finding that multiple grounds for termination of S.T.'s parental rights were proven and further find no merit to any of S.T.'s arguments in connection therewith on appeal.

We next address appellants' argument that DCFS failed to make reasonable efforts to achieve reunification. See La. Ch.C. art 682 (requiring DCFS to demonstrate reasonable efforts were made to reunify the parent and child after removal). Appellants argue DCFS failed to offer assistance to S.T. with regard to her difficulties with transportation to appointments and to Tr.L. in finding suitable housing. "Reasonable efforts" are defined by La. Ch.C. art. 603(26) as "the exercise of ordinary diligence and care by the department throughout the pendency of a case pursuant to the obligations imposed on the state by federal and state law to provide services and supports designed and intended ... to reunite families after separation, and to achieve safe permanency for children." This requires DCFS to at least direct parents toward appropriate agencies that may be able to assist them in meeting their responsibilities and removing the impediments to reunification with their children. *State in Interest of H.R.*, 341 So. 3d at 601-02. S.T. participated in two inpatient substance abuse programs and testified Start provided transportation to her current substance abuse counseling. Thus, S.T. did not demonstrate a need for transportation to substance abuse treatment. Tr.L. testified he knew T.L. could not be accommodated in his mother's house where he was living at the time of the October 8, 2024 hearing. However, there was no evidence Tr.L. requested assistance in

10

finding a home for himself. Considering the record, we find no merit to this argument.

Finally, we address appellants' argument that the trial court erred in finding that termination of parental rights was in T.L.'s best interest. In its judgment, the trial court found the evidence presented at the hearing clearly showed that both parents failed to comply with their case plans and provide T.L. with the stability necessary for his well-being, and, based on the evidence, it was in T.L.'s best interest that the parental rights of both parents be terminated so that T.L. could be placed in a stable and permanent home through adoption.

After considering the entire record, we find a reasonable factual basis exists for the trial court's finding that termination of S.T.'s and Tr.L.'s parental rights was in the best interest of T.L. Thus, we find no error in the trial court's judgment terminating S.T.'s and Tr.L.'s parental rights.

## CONCLUSION

For the reasons set forth above, the trial court's October 13, 2024 judgment terminating the parental rights of both S.T. and Tr.L. to T.L. and certifying him for adoption is affirmed. Costs are assessed one-half to S.T. and one-half to Tr.L.

**AFFIRMED.**

11